Eugene DeSANTIS, Plaintiff,

v.

HAFNER CREATIONS, INC., Defendant.

Civil Action No. 96–804–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 30, 1996.

dilution claim.

420

Robert A. Vanderhye, Nixon & Vanderhye, P.C., Arlington, VA, for Plaintiff.

A. Hugo Blankingship, III, Law Offices of A. Hugo Blankingship, III, Alexandria, Virginia, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

The question presented in this patent infringement suit is whether the Virginia "long-arm" statute, Virginia Code § 8.01–328.1 *et seq.*, reaches an alleged patent infringer whose only contacts with Virginia were: (i) to advertise the allegedly infringing product in a nationally-distributed publication; (ii) to sell one of the allegedly infringing products, F.O.B. Florida, to an employee of plaintiff's Virginia law firm; and (iii) to sell two non-infringing, unrelated products to Virginia purchasers F.O.B. Florida.

## I

Plaintiff, Eugene DeSantis, d/b/a Desantis Holster & Leather Goods (DeSantis), has invented and patented, and now manufactures and sells, a special type of carrying-bag for firearms. This bag, which resembles a conventional "waist or fanny pack," [1] contains a holster that enables the wearer to conceal a hand gun in a readily accessible location. Persons authorized to carry concealed weapons, such as police officers and security guards, typically use these "quick draw" fanny packs in undercover or covert situations. The patent covering this invention issued to DeSantis on December 5, 1992 as United States Patent No. 5,170,919 (the '919 patent).

Defendant, Hafner Creations, Inc. ("Hafner"), a Florida corporation, manufactures a variety of padded gun bags and other shooting accessories. Hafner operates from a single office in Lake City, Florida and conducts the majority of its business by mail or telephone. Hafner processes all orders and payments in Florida and ships to its customers F.O.B. Florida. Like DeSantis, Hafner produces and sells a "quick draw" waist pack that completely conceals a hand gun in a readily accessible location. On two or three occasions, from September 1995 through October 1995, Hafner advertised the allegedly infringing product in "Shotgun News," a nationally-circulated publication with approximately 3,300 individual subscribers in Virginia. In Northern Virginia, Shotgun News is on sale at numerous Tower Records stores. The Shotgun News advertisement features a picture of Hafner's waist pack holster, lists Hafner's telephone and fax numbers, offers free catalogues,[2] notes that Hafner accepts "all major credit cards," and quotes prices for three sizes of the waist pack holster.

From time to time, Hafner has received telephone inquiries at its Florida office from Virginia residents and has sold various of its products to those desiring to purchase them. Within the past twelve months, Hafner has sold and delivered three products to customers in Virginia, only one of which involved the allegedly infringing waist pack holster. Significantly, the lone sale of the Hafner "quick draw" waist pack was initiated by

---

1. A "waist or fanny pack" consists of a small pouch and a belt worn as an accessory around a person's waist. These pouches are commonly used by travelers to carry and secure their valuables and personal effects, such as money, passports, and cameras.

2. Hafner's seventeen page color catalogue contains pictures of its "quick draw" waist pack holster and invites potential customers to contact its Florida office. The record does not disclose the number of catalogues Hafner sent to Virginia residents responding to the Shotgun News advertisement.

Michael Crawford, a paralegal at the law firm representing DeSantis in this case. Specifically, Crawford telephoned Hafner on May 29, 1996 and ordered the small waist pack holster as advertised in Shotgun News. Several days later, Crawford received the product and an invoice for $52.95. The three sales to Virginia residents generated for Hafner a total revenue of $330.80.

Apart from these three sales, Hafner contends that it has had no other contact with Virginia or residents of Virginia. Specifically, Hafner claims that it does not now and never has: 1) maintained an agent, salesperson, or marketing representative in Virginia; 2) operated a corporate office in Virginia; 3) owned or leased any property in Virginia; 4) maintained a bank account in Virginia; 5) held a telephone listing in Virginia; 6) advertised in Virginia newspapers; 7) executed any contract in Virginia; or 8) contracted with any person to distribute Hafner products in Virginia.

In June 1996, DeSantis filed a complaint alleging Hafner's infringement of the '919 patent. Hafner responded by presenting a motion to dismiss for lack of personal jurisdiction, which after some dispute, was deemed timely filed.[3] The matter was then argued orally, with the Court taking Hafner's motion under advisement and permitting the parties to file supplemental memoranda. *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp.

---

**3.** After the complaint was served, Hafner informally requested, and DeSantis voluntarily agreed to, a thirty-day extension of the time to answer. When Hafner failed to file a responsive pleading within the extended time period, DeSantis obtained a default under Rule 55(a), Fed.R.Civ.P. Thereafter, Hafner filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., and a motion to set aside the prior default. The latter motion was granted and the former was deemed timely filed.

**4.** The Due Process Clause of the Fifth Amendment, not the Fourteenth Amendment, applies "to questions of personal jurisdiction in federal question cases, such as those arising under the patent laws." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed.Cir.1995); *accord Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389

---

419 (1996). The parties did so and the issue is now ripe for disposition.

## II

Hafner contends that its contacts with the Commonwealth of Virginia—the advertising of the allegedly infringing product in a national publication, the sale of one of the products to a Virginia agent of plaintiff, and the sale of two non-infringing, unconnected products to uninterested Virginians—are insufficient to comport either with Virginia's long-arm statute, Virginia Code § 8.01–328.1, or the Constitution's due process requirements.[4] Desantis counters that Hafner's contacts with Virginia authorize personal jurisdiction.

It is well-established that a federal court may exercise personal jurisdiction over a non-resident defendant only if: (i) the applicable state long-arm statute confers jurisdiction; and (ii) the assertion of that jurisdiction is consistent with constitutional due process.[5] Thus, personal jurisdiction analysis calls for a two step inquiry. The first step is to determine whether Virginia's long-arm statute reaches the non-resident defendant given the cause of action alleged and the nature of the defendant's Virginia contacts.[6] The second step requires determining whether the exercise of personal jurisdiction in the circumstances is consistent with due process, that is, whether the long-arm statute's reach

---

n. 2 (8th Cir.1991); *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir.1975).

**5.** *See, e.g., Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir.1993); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985); *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982); *Holland v. Hay*, 840 F.Supp. 1091, 1095 (E.D.Va.1994); *Processing Research, Inc. v. Larson*, 686 F.Supp. 119, 121 (E.D.Va.1988).

**6.** *See, e.g., English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990); *Peanut Corp. Of Am.*, 696 F.2d at 313; *Krantz v. Air Line Pilots Ass'n, Int'l*, 245 Va. 202, 204, 427 S.E.2d 326 (1993); *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 259, 377 S.E.2d 388, *cert. denied*, 492 U.S. 921, 109 S.Ct. 3248, 106 L.Ed.2d 594 (1989); *John G.*

in the situation exceeds its constitutional grasp.[7]

■ Several subsidiary principles guide courts in this two step process. With respect to the first step, it is well-settled that the provisions of § 8.01–328.1 extend personal jurisdiction to the outermost boundaries of due process.[8] But it is equally well-settled that Virginia's long-arm statute must be satisfied "even in those situations where it could plausibly be argued that a lesser standard would meet due process." *Robinson v. Egnor*, 699 F.Supp. 1207, 1211 (E.D.Va.1988) (quoting *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1243 (E.D.Va.1977)); *see also, Blue Ridge Bank v. Veribanc*, 755 F.2d 371, 371 (4th Cir.1985). In other words, it is possible that a non-resident defendant's contacts with Virginia could fulfill the dictates of due process, yet escape the literal grasp of Virginia's long-arm statute. Put another way, Virginia's long-arm statute provides a ceiling of procedural protections above the federal floor of constitutional due process.[9]

With respect to the second, constitutional step, " '[t]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum state,' " *Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)), "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)).[10]

This two step jurisdictional analysis, applied here, compels the conclusion that the requirements of the Virginia long-arm statute for personal jurisdiction are not met. Put another way, the statute's literal grasp simply does not reach Hafner in the circumstances at bar. Although DeSantis never directly specified which provision of Virginia's long-arm statute applies in this action, only three of the statute's subsections would seem to have any applicability here: § 8.01–328.1(A)(1), § 8.01.328.1(A)(3), and § 8.01–328.1(A)(4). An examination of these provisions discloses that none fits here.

■ Under § 8.01–328.1(A)(1), the exercise of personal jurisdiction is proper only if

---

*Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 739, 180 S.E.2d 664 (1971).

7. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. 310, 311–313, 66 S.Ct. 154, 156–157, 90 L.Ed. 95 (1945); *Hanson v. Denckla*, 357 U.S. 235, 245–46, 78 S.Ct. 1228, 1235–36, 2 L.Ed.2d 1283 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289–91, 100 S.Ct. 559, 563–64, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463–64, 105 S.Ct. 2174, 2177–78, 85 L.Ed.2d 528 (1985).

8. *See, e.g., Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296, 1301 (4th Cir.1983); *Peanut Corp. of Am.*, 696 F.2d at 313; *John G. Kolbe, Inc.*, 211 Va. at 739, 180 S.E.2d 664; *Carmichael v. Snyder*, 209 Va. 451, 456, 164 S.E.2d 703 (1968).

9. For statements of that familiar proposition in other contexts, see, e.g., *United States v. Hammad*, 858 F.2d 834, 839 (2d Cir.1988) ("The Constitution defines only the 'minimal historic safeguards' which defendants must receive rather than the outer bounds of those we may afford them. In other words, the Constitution prescribes a floor below which protections may not

fall, rather than a ceiling beyond which they may not rise.") (citation omitted), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *Van Harken v. City of Chicago*, 906 F.Supp. 1182, 1190 (N.D.Ill.1995), ("It is universally understood that while the United States Constitution provides a solid floor of constitutional protections, the States may build a ceiling of protection over that federal floor.").

10. As a general rule in patent infringement cases arising in district courts in this circuit, the Federal Circuit applies Fourth Circuit precedent to routine procedural matters and its own precedent to substantive questions unique to patent law. *Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1574–75 (Fed.Cir.1984). Recently, however, the Federal Circuit found that certain aspects of personal jurisdiction are "intimately related to substantive patent law" and that, as a consequence, Federal Circuit law, as opposed to that of the Fourth Circuit, controls these jurisdictional aspects. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir.1994). But, of course, the Supreme Court of Virginia remains the final arbiter of the meaning and application of the Virginia long-arm statute.

the asserted cause of action stems from a non-resident defendant's "[t]ransacting any business in this Commonwealth." *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941, 943–44 (E.D.Va.1991). Although a single act by the non-resident defendant may qualify as "transacting business," [11] the single act must be significant in order to confer jurisdiction.[12]

Given these governing principles, this record does not support a holding that Hafner has transacted business in Virginia. Over the past twelve months, Hafner sold and shipped, FOB Florida, only one allegedly infringing waist pack holster to a Virginia resident. And that Virginia resident was Michael Crawford, a paralegal for DeSantis' counsel, who engaged in the transaction solely to establish personal jurisdiction. Yet, this lone transaction cannot be the basis for personal jurisdiction over Hafner.[13] To hold otherwise would grant plaintiffs the power to manufacture personal jurisdiction in a forum that presents hardship and inconvenience to defendants. Nothing in the language or purpose of the Virginia long-arm statute authorizes this species of forum shopping, which seems as inequitable as it is illegitimate.[14]

Moreover, to hold otherwise would impermissibly dilute the notion that a single act must be significant in order to confer jurisdiction.

■ Reported cases of manufactured personal jurisdiction are uncommon. The few that exist generally prohibit plaintiffs from manufacturing personal jurisdiction over defendants by initiating a business transaction. *See, e.g., Martin v. First Interstate Bank of Cal.*, 914 F.Supp. 473, 477 (D.N.M.1995) (holding that defendant's issuance of letters of credit to plaintiffs could not serve as the basis for transacting business under New Mexico's long-arm statute because "[t]he record makes it clear that it was [p]laintiffs, not [d]efendant FIBC who initiated the transaction at issue in this case"); *Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.*, 80 F.R.D. 494, 499 (S.D.N.Y.1978) (finding that "shipments into the state coupled with instate solicitation by [d]efendant can create a basis for jurisdiction [under New York's transacting business provision], [but that this was not the case because] the solicitation here was done by plaintiff.")[15] Although the·

**11.** *See, e.g., Williams Crane & Rigging, Inc. v. B & L Sys., Ltd.*, 466 F.Supp. 956, 957 (E.D.Va. 1979); *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534–35, 238 S.E.2d 800 (1977).

**12.** *See, e.g., Ajax Realty Corp. v. J.F. Zook, Inc.*, 493 F.2d 818, 821 n. 4 (4th Cir.1972) (finding no personal jurisdiction under the "transacting business" subsection when "defendant's sole contact with Virginia was its shipment of [defective window] frames to Virginia"), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973); *Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 391, 396 (E.D.Va.1984) (holding that "mere telephone conversations, telex messages and letters negotiating a transaction are insufficient to form a basis for in personam jurisdiction" under § 8.01–328.1(A)(1)).

**13.** Appropriately, DeSantis does not allege that Hafner's sale of two non-infringing, unrelated products to residents of Virginia provides the basis for personal jurisdiction under the "transacting business" provision of Virginia's long-arm statute. *See* Va.Code § 8.01–328.1(A)(1) (requiring a causal link between the acts relied on for personal jurisdiction and the cause of action asserted); *see also Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 589 (E.D.Va.1992); *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941, 943 (E.D.Va.1991); *Eastern Scientific Mktg.,*

*Inc. v. Tekna–Seal, Inc.*, 696 F.Supp. 173, 176 (E.D.Va.1988).

**14.** The term "forum shopping," often used indiscriminately, has a pejorative connotation. Yet, strictly speaking, venue and long-arm statutes authorize some degree of legitimate forum shopping. When this legitimate species of forum shopping results in injustice or significance inconvenience, 28 U.S.C. § 1404(a) provides a remedy, as does due process in extreme cases. But the forum shopping at issue here is quite different. In legitimate forum shopping, personal jurisdiction either antedates the cause of action or arises in conjunction with the action, as a consequence of it. Here, by contrast, the personal jurisdiction post-dated the accrual of the cause of action and was manufactured by plaintiff solely for the purpose of providing plaintiff with a preferred forum for litigation.

**15.** "Purposeful availment" analysis under the second, constitutional step of the personal jurisdiction inquiry is also instructive on this point. " 'Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff ... [and generally] ... requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.' " *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1420 (10th Cir.1988) (quot-

issue is a matter of first impression in Virginia, these cases are persuasive support for the principle that a plaintiff to whom a cause of action has accrued may not thereafter initiate a transaction for the sole purpose of creating jurisdiction under the transacting business requirement of the Virginia long-arm statute.

■ In any event, even if Hafner's sale to DeSantis' law firm could be considered a possible basis for jurisdiction, that transaction, by itself, does not suffice under Virginia's long-arm statute. Numerous courts have held that a single shipment of goods to Virginia, without more, does not constitute the transacting of any business under § 8.01–328.1(A)(1). *See, e.g., Processing Research, Inc. v. Larson,* 686 F.Supp. 119, 122–123 n. 2 (E.D.Va.1988); *Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818, 821 n. 4 (4th Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973). The same result must obtain here. Hafner took great pains to structure the transaction in a manner calculated to minimize its business contact with Virginia. Aside from Hafner's national advertisement,[16] Hafner made no purposeful effort to transact business in the forum state. In the circumstances, Hafner merely responded to an inquiry from Crawford, a prospective buyer, by shipping the waist pack holster to Virginia, FOB Florida.[17] This isolated transaction cannot amount to transacting business. Accordingly, § 8.01–328.1(A)(1) affords no basis here for the exercise of personal jurisdiction over Hafner.

■ Under the next possibly applicable provision, § 8.01–328.1(A)(3), a court in Virginia may assert long-arm jurisdiction over a non-resident defendant if that party "caus[ed] tortious injury by an act or omission in this Commonwealth." This provision requires that an out-of-state defendant be physically present in Virginia when commit-

---

· ing *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.1986)). In other words, the "purposeful availment" analysis precludes plaintiffs from manufacturing the circumstances that give rise to personal jurisdiction over non-resident defendants. There is no sound reason why this lesson should not be equally applicable to the long-arm statute transacting business analysis as well.

16. Although DeSantis does not explicitly contend that Hafner's placement of advertisements in Shotgun News constitutes transacting business in Virginia, that argument would be of no avail as well. It is clear that a non-resident defendant's placement of a classified advertisement in a national publication and his response to an inquiry from a prospective buyer does not amount to "transacting business" in Virginia. *See Processing Research, Inc.,* 686 F.Supp. at 122 (denying personal jurisdiction under § 8.01–328.1(A)(1) because to do so on the basis of defendant's national advertisement "would convert the Long Arm Statute from a 'single act' statute to a 'single act of any kind or nature whatsoever statute' "); *see also, Williams v. Canon, Inc.,* 432 F.Supp. 376, 380 (C.D.Cal.1977) ("National advertising which happens to appear in a particular jurisdiction does not constitute transacting business in that jurisdiction.").

17. DeSantis argues that the weight of legal authority suggests that FOB shipping arrangements are irrelevant to personal jurisdiction analysis. *See, e.g., Benitez–Allende v. Alcan Aluminio do Brasil, S.A.,* 857 F.2d 26, 30 (1st Cir.1988), *cert.* denied, 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989); *Taubler v. Giraud,* 655 F.2d 991, 995 (9th Cir.1981); *United States v. Toyota Motor Corp.,* 561 F.Supp. 354, 356 (C.D.Cal. 1983); *Meyers v. Asics Corp.,* 11 USPQ 1777, 1780 (C.D.Cal.1989). This assessment is an overstatement; existing authority, at best, is split on this issue. Many cases sensibly conclude that the practice of sending shipments FOB is one of many factors to be considered in assessing the propriety of personal jurisdiction. *See, e.g., Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.,* 921 F.Supp. 1206, 1211 (D.Vt. 1996) (finding "the place of passage of title and risk of loss relevant to the exercise of personal jurisdiction"); *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 658–59 (4th Cir.1989) (holding non-resident defendant's sales to South Carolina insufficient to confer personal jurisdiction because, in part, the sold products were shipped FOB Michigan); *Lemme v. Wine of Japan Import, Inc.,* 631 F.Supp. 456, 459 (E.D.N.Y.1986) (stating that "when a foreign corporation sells goods [FOB] out-of-state, it does not, under [New York's transacting business provision], perform its contract in New York"). Of course, there may be instances where despite an FOB label, risk of loss remains with the seller by arrangement. In these circumstances, the FOB arrangement may be merely a sham designed to circumvent the provisions of a long-arm statute. Nothing in this record suggests that this occurred here. Accordingly, the fact that Hafner's sole shipment into Virginia was made FOB Florida, with title passing in Florida, is a factor that further diminishes the jurisdictional significance of the event.

ting the act or omission giving rise to the tort at issue. *See Alton v. Wang,* 941 F.Supp. 66, 67 (W.D.Va.1996) (citing cases that construe New York's similar long-arm statute provision and finding that defendant, who sent e-mail messages and letters from Canada and China to plaintiff in Virginia, did not commit any acts while physically present in Virginia for purposes of jurisdiction under § 8.01–328.1(A)(3)).[18]

 Next, DeSantis contends that Hafner committed an affirmative tort by repeatedly advertising the allegedly infringing waist pack holster in Shotgun News and that, as a consequence, Virginia's long-arm statute reaches Hafner. This argument fails because Hafner was not present in Virginia when committing the allegedly tortious act of offering to sell a patented invention via advertising. To be sure, patent infringement is a tort. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1569 (Fed.Cir. 1994); *North Am. Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1578–79 (Fed.Cir.1994). And a recent amendment to the patent statute, 35 U.S.C. § 271(1)(a), expanded the definition of patent infringement to encompass an offer to sell a patented invention. Thus, Hafner's Shotgun News advertisement, which constituted an offer to sell the allegedly infringing waist pack holsters, is appropriately characterized as a tort. But this is all of no avail to DeSantis because Hafner placed the advertisement in Shotgun News, which is published in Hastings, Nebraska, from its office in Florida. The fact that Shotgun News has 3,300 Virginia subscribers and is sold at numerous Tower Records stores in Northern Virginia is, therefore, immaterial. Hafner was not physically present in Virginia when committing the tort at issue and, thus, § 8.01–328.1(A)(3) does not apply here.

 Finally, § 8.01–328.1(A)(4) permits the assertion of personal jurisdiction over a non-resident defendant who "caus[ed] tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Again, DeSantis fails to demonstrate that this specific provision applies to Hafner. While there is an adequate showing of an act by Hafner outside Virginia which allegedly caused an injury in Virginia, DeSantis has not established a relationship between Hafner and Virginia in any of the three ways specified by § 8.01–328.1(A)(4). Hafner placed one advertisement that ran on two or three occasions in a national publication distributed in Virginia. That action by itself does not amount to "regular solicitation" of business there. To find otherwise would potentially subject Hafner or any other party to Virginia's jurisdiction whenever it advertises nationally. Further, the placement of a national advertisement, even if repeated, does not constitute a "persistent course of conduct." As construed, that requirement means, "[a]t a minimum, ... that defendant maintained some sort of ongoing interaction with the forum state." *Willis,* 441 F.Supp. at 1242. Hafner's contacts with Virginia are, at best, sporadic, consisting of three products shipped to Virginia residents over the course of the past twelve months, its national advertisements in Shotgun News, and the distribution of an undetermined number of free color catalogues. Moreover, the total sale of little more than $300 worth of goods in one year does not satisfy the "substantial revenue" basis for jurisdiction. Although no court has yet to establish an absolute dollar amount that may fulfill the "substantial revenue" test, the $300 in this action falls far short of

---

18. *See, e.g., Roth v. El Al Israel Airlines, Ltd.,* 709 F.Supp. 487, 490 (S.D.N.Y.1989); *Van Essche v. Leroy,* 692 F.Supp. 320, 324 (S.D.N.Y.1988).

Apart from these New York cases, a simple comparison of the text of § 8.01–328.1(A)(3) with that of § 8.01–328.1(A)(4), discussed *infra,* supports the result reached in *Alton.* In essence, § 8.01–328.1(A)(4) confers personal jurisdiction over non-resident defendants who have caused

tortious injuries in Virginia by acts or omissions committed outside of Virginia. Thus, for § 8.01–328.1(A)(3) to have any meaning independent of § 8.01–328.1(A)(4), it must require non-resident defendants to be present in Virginia when causing tortious injuries in Virginia. To hold otherwise would render § 8.01–328.1(A)(3) superfluous.

the amount courts recognize as "substantial."[19] In the final analysis, therefore, § 8.01–328.1(A)(4) also fails to reach Hafner.

In sum, no provision of Virginia's long-arm statute grasps Hafner. Accordingly, Hafner's motion to dismiss for lack of personal jurisdiction must be **GRANTED**.

Notwithstanding the absence of personal jurisdiction, federal courts have the power to transfer matters in the interests of justice under 28 U.S.C. § 1406(a). *See Porter v. Groat,* 840 F.2d 255, 258 (4th Cir.1988). That power should be exercised here. Accordingly, the Court will **ORDER** that this action be transferred to the United States District Court for the Middle District of Florida.

An appropriate Order will issue.

---

**19.** Courts have generally found that amounts greater than $300 are needed to satisfy the "substantial revenue" requirement. *See, e.g., Ajax Realty Corp.,* 493 F.2d at 821–22 (finding that defendant's $37,000 constituted substantial revenue for purposes of subsection (A)(5)); *Processing Research, Inc.,* 686 F.Supp. at 122 (holding that $119,850 received by defendant for the sale of an aircraft satisfied the substantial revenue provision); *Jackson v. National Linen Serv. Corp.,* 248 F.Supp. 962, 965 (W.D.Va.1965) (determining that $25,000 was sufficient to meet the substantial revenue test).