**INTEL CORPORATION, Plaintiff,**

v.

**SILICON STORAGE TECHNOLOGY, INC., Defendant.**

**Civil Action No. 97–608–RRM.**

United States District Court, D. Delaware.

Aug. 5, 1998.

William J. Marsden, Jr., Joanne Ceballos, Potter Anderson & Corroon, Wilmington, DE, James F. Valentine, Arnold White & Durkee, Menlo Park, CA, Peter N. Detkin, Christopher M. Moropoulos, Intel Corporation, Santa Clara, CA, for plaintiff.

Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, DE, Daniel Johnson, Jr., Sean P. DeBruine, Elizabeth E. Launer,

Cooley Godward, Palo Alto, CA, for defendant.

## MEMORANDUM OPINION

MCKELVIE, District Judge.

This is a patent case. Plaintiff Intel Corporation ("Intel") owns four patents for electrically erasable programmable read only memory chips ("EEPROMs"), also known as flash memory chips. Intel is a Delaware corporation with its principal place of business in Santa Clara, California. Defendant Silicon Storage Technology, Inc. ("SST") is a California corporation with its principal place of business in Sunnyvale, California. On November 14, 1997, Intel filed a complaint in this court claiming that SST has infringed its patents by using and selling infringing flash EEPROM chips, and by inducing others to use and sell infringing flash EEPROM chips, in the District of Delaware and elsewhere in the United States. On December 4, 1997, SST filed a motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to the Northern District of California. The following is the court's decision on this motion.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the briefs and evidentiary exhibits submitted by the parties. Both parties have submitted, along with their briefs on the issue of jurisdiction, transcripts of depositions taken during jurisdictional discovery, as well as copies of financial reports, contracts, and advertisements.

### A. *What Is an EEPROM?*

Intel is a leading manufacturer of microprocessors and memory devices, including EEPROM flash memory chips. Read-only memory, or ROM, is a type of computer memory that retains its contents even when the computer's power is turned off. Programmable ROM, or PROM, is manufactured as blank memory and can be programmed by the user. Erasable PROM, or EPROM, can be erased and reprogrammed, usually by exposure to ultraviolet light. Electrically erasable PROM, or EEPROM, can be erased simply by applying electricity. Flash EEPROM can be programmed or erased in blocks of data, rather than one byte at a time, for improved speed. The chips are used in personal computers and other electronic products manufactured and distributed worldwide.

### B. *The Parties*

Intel has 48,500 employees worldwide. Intel's revenue for the nine months ending September 27, 1997 was $18.5 billion. Its flash memory business employs 88 engineers and generated $584 million in revenue during the first three quarters of 1997.

SST also designs and manufactures semiconductor memory products, including EEPROMs. It has 184 employees, including sales and marketing personnel in Japan, Massachusetts, and Florida. SST's revenue for the nine months ending September 27, 1997 was $55 million.

SST engages in research and development in California and New Mexico. It manufactures products in New Mexico and Japan, and sells 86% of its products overseas. Its customers include Panasonic, Sony, Dell, and Acer, manufacturers whose products are available by direct sale or through retail channels in Delaware. It is unclear whether any SST products are actually present in products sold in Delaware by these manufacturers.

SST advertises its products in trade publications circulated throughout the United States. SST's advertisements recommend its flash EEPROM products to manufacturers for use in cellular phones, video games, and digital cameras, as well as in computer products. They provide a toll-free telephone number and a web site address. The ads appear in EDN Magazine, which has 220 subscribers in Delaware, Electronic Buyers' News, which has 109 subscribers in Delaware, and Electronic Engineering Times, which has 166 subscribers in Delaware.

SST makes its products available in the United States through four independent regional distributors. The distributors warehouse the product, process customer orders,

and ship products to customers. Nu Horizons Electronics Corporation ("Nu Horizons") of Amityville, New York is SST's regional distributor for the mid-Atlantic region, which includes Delaware. On March 13, 1998, after Intel had filed its complaint, an employee of Intel's Delaware counsel contacted Nu Horizons. The employee ordered four SST parts by telephone and received those parts at counsel's Delaware office on March 16, 1998.

In addition to its regional distributors, SST has contracts with several regional sales representative firms, each of which seeks out prospective customers for products supplied by a number of manufacturers. Delaware is one of thirty-four states assigned to sales representatives acting on behalf of SST. S-J Mid–Atlantic, Inc. of Mount Laurel, New Jersey is SST's sales representative in New Jersey, Delaware, and eastern Pennsylvania. S-J Mid–Atlantic sales representatives visit customers in Delaware on behalf of manufacturers other than SST, but they have never presented SST products for sale to anyone in Delaware. There appear to be no prospective customers for flash EEPROM products in Delaware.

SST publishes a technical data book which provides product specifications, a corporate overview, and lists of distributors and sales representatives. In one instance S-J Mid–Atlantic shipped an SST data book from its New Jersey location to a manufacturer in Delaware. S-J Mid–Atlantic did not make a price quote and did not complete a sale. At the time of the filing of Intel's complaint, it appears that SST had never made a sale in Delaware either directly or through its distributors or sales representatives.

### C. *The Complaint and the Motion to Dismiss*

In its opening brief, defendant SST argues that Intel's complaint should be dismissed pursuant to Federal Rules of Civil Procedure Rule 12(b)(2) for lack of personal jurisdiction. SST claims that it has not sold any products in Delaware, does not derive any revenue from Delaware, and does not have any significant contacts with Delaware. SST states that it does not have any offices, facilities, or employees in Delaware, that it has not en-

tered into any contracts in Delaware, that it is not licensed to do business in Delaware, and that it does not have any plan to specifically target Delaware residents as customers. SST states that its chips are present in only a minimal number of products, many of which are not sold in the United States. SST claims that any presence in Delaware of products produced by other manufacturers and incorporating SST components is "merely fortuitous" and not the result of any SST business plan.

In its answering brief Intel claims that SST has sold infringing products directly and indirectly in Delaware. Intel also claims that SST's placement of advertisements in national magazines with subscribers in Delaware, along with its maintenance of a sales and distribution network targeting Delaware, constitute infringing offers to sell under 35 U.S.C. § 271(a).

Intel claims that SST· has maintained a chain of distribution that reaches into Delaware, and that through its agents S-J Mid–Atlantic and Nu Horizons it has targeted the Delaware market and shown its willingness and intent to sell infringing products in Delaware. While Intel concedes that SST had made no direct sales of its products into Delaware at the time of the filing of this suit, it argues that the availability of SST's flash memory chips through regional distributors and the targeting of Delaware as a potential market should be sufficient for jurisdiction. Intel also argues that employees of S-J Mid–Atlantic are present in Delaware and that while here they are contractually obligated to aggressively pursue sales of SST products.

Intel claims that the purchase of SST parts by an employee of Intel's Delaware counsel demonstrates that the chain of distribution reaches into Delaware. Intel also contends that this single direct sale constitutes actual infringement in Delaware and gives rise to specific jurisdiction.

Intel also claims that SST shipped a "data book" to a prospective customer in Delaware and that this act of solicitation further demonstrates the existence of a regular course of conduct that should expose SST to jurisdiction in Delaware. Intel argues that the data

book is both a specific offer to sell infringing products and that it is part of a pattern of conduct that should establish a general presence in the State.

Intel argues that even if SST has made no direct sales in Delaware, its products are present in the stream of commerce as components of products manufactured by SST's customers. SST sells chips to popular computer and electronics manufacturers whose products are readily available to Delaware consumers. Intel claims that it is entitled to a reasonable inference that SST's products are actually present in Delaware, and complains that SST has refused to provide Intel with a complete customer list.

Intel also claims that SST's placement of advertisements in national magazines with significant circulation in Delaware infringes its rights as a patent owner. Intel argues that SST could or should have known that the magazines would be circulated in Delaware and that the subscribers are persons who are likely to have an influence on decisions to purchase Intel or SST products. Intel argues that advertisements in national magazines constitute infringing offers to sell and that they should, without more, be sufficient to establish jurisdiction whereever they are circulated.

## II. *DISCUSSION*

The court applies a two-step analysis to determine whether it can exercise personal jurisdiction over SST. *See Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir.1985). First, Fed.R.Civ.P. Rule 4(e) requires that the court look to Delaware statutes governing service of process. Rule 4(e) states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." Fed. R.Civ.P. Rule 4(e)(1) (1997). Thus, the court will determine whether there is a statutory basis for finding jurisdiction under the Delaware long-arm statute. *See* 10 Del. C. § 3104(c). In applying the Delaware long-arm statute, the court will defer to the interpretations of the Delaware state courts. *See Graphic Controls Corp. v. Utah Medical Prods., Inc.*, 149 F.3d 1382 (Fed.Cir. 1998) (stating that "in interpreting the meaning of

state long-arm statutes, we elect to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process").

■ Second, if the Delaware long-arm statute authorizes jurisdiction, then the court asks whether the exercise of jurisdiction violates SST's Fourteenth Amendment right to due process. The exercise of jurisdiction by the federal court must be compatible both with the law of the state in which it sits and with the defendant's constitutional right to due process. *See Max Daetwyler*, 762 F.2d at 293 (finding that jurisdiction "is tested against both constitutional and statutory standards").

■ The Delaware Supreme Court has stated that the Delaware long-arm statute should be "broadly construed to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.1986). However, it is important not to collapse the long-arm inquiry into the due process inquiry. The Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis. As then-chancellor William T. Allen stated in *Red Sail Easter Partners v. Radio City Music Hall Productions*, 1991 WL 129174, at *3 (Del.Ch. July 10, 1991),

the Supreme Court did not intend in LaNuova to direct the trial court to ignore the specific words of Section 3104 and to henceforth analyze all questions arising under Section 3104 only in the broad terms of fundamental fairness that guide determination of the constitutional question. The Supreme Court commands that this statute be given a liberal construction so that its purpose is achieved, but it has not directed that the application of statutory words to the facts in hand be slighted.

In *Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476 (Del.1992), the Delaware Supreme Court stated that the two steps of jurisdictional analysis are "indepen-

dent" and that the first step involves "an application of the language of the long arm statute while the second step involves issues of constitutional dimensions." 611 A.2d at 483. Likewise, Delaware Superior Court stated that "[w]hen qualifying language is used [in § 3104(c)], the Court should not ignore that language out of a desire to afford maximum jurisdictional coverage." *Ramada Inns v. Drinkha,* No. Civ. A. 83C–AU–56, 1984 WL 247023 at *2 (Del.Super.Ct. May 17, 1984). Therefore, the court must consider the specific requirements of the Delaware long-arm statute before going on to the constitutional issues.

A. *Does the Delaware Long–Arm Statute Authorize the Court to Exercise Personal Jurisdiction Over SST?*

The Delaware long-arm statute states in relevant part that:

a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

. . . .

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

. . . .

10 Del. C. § 3104(c)(1), (3), (4).

Intel argues that the court may find jurisdiction under these three subsections of the Delaware long-arm statute. Intel claims that SST "transacts business" in Delaware under § 3104(c)(1), that it "causes tortious injury" by acts in the State under § 3104(c)(3), and that it "regularly does or solicits business" in Delaware for purposes of § 3104(c)(4).

1. *Does § 3104(c)(1) authorize the court to exercise jurisdiction over SST?*

State courts have interpreted subsection (c)(1), the "transacting business" provision, as a "specific" or "transactional" jurisdiction provision. *LaNuova,* 513 A.2d at 768. Specific jurisdiction requires that the plaintiff's claim arise from the defendant's activity, that there be a "nexus" between the cause of action and the conduct used as a basis for jurisdiction. *Id.* 513 A.2d at 769. Transactional jurisdiction means that jurisdiction can arise from a single transaction in the state if the relationship between the transaction and the plaintiff's cause of action is sufficiently close. In *LaNuova,* the Delaware Supreme Court found that "[w]here personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction." 513 A.2d at 768. Other courts have suggested that a defendant may engage in limited activity in the jurisdiction that does not rise to the level of a "transaction" for purposes of § 3104(c)(1). *See Moore v. Little Giant Indus., Inc.,* 513 F.Supp. 1043, 1047 (D.Del. 1981) (finding that shipment of a ladder into Delaware was not sufficient); *Waters v. Deutz Corp.,* 460 A.2d 1332, 1335 (Del.Super.Ct.1983) (finding that marketing activities must be sufficiently important that defendant would perform similar operations in absence of representative). The court must conduct a fact-specific inquiry to determine whether a defendant's activities amount to "transacting business" under § 3104(c)(1).

Intel claims that SST has engaged in a number of activities in Delaware that amount to "transacting business" for purposes of § 3104(c)(1). These activities include placing advertisements in national magazines circulated to subscribers in Delaware, establishing a chain of distribution through its agents Nu Horizons and S–J Mid–Atlantic, mailing a data book to a Delaware resident, selling allegedly infringing parts to an employee of Intel's local counsel through the mail, and placing goods in the stream of commerce with the knowledge that those goods are likely to reach Delaware. The court considers these activities individually and together

to determine whether SST has transacted business in Delaware.

■ Intel first claims that SST "transacts business" in Delaware for purposes of § 3104(c)(1) because it solicits business in Delaware through advertisements in national magazines. In *Thorn EMI North America, Inc. v. Micron Technology, Inc.*, 821 F.Supp. 272 (D.Del.1993), the court found that "[m]ere solicitation does not arise to transacting business." *Id.* 821 F.Supp. at 274. *See also Waters*, 460 A.2d at 1335.

However, Intel points out that *Thorn EMI* was decided before Congress amended the patent law to include "offering to sell" a patented invention under the definition of infringement. The section on infringement now reads "whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent." 35 U.S.C. § 271(a) (effective January 1, 1996). Intel claims that SST's advertisements in national magazines with subscribers in Delaware constitute offers to sell the allegedly infringing products in Delaware. Intel argues that following the amendment of the patent law, offering to sell should be considered a form of doing business, or of transacting business, and should now be sufficient to satisfy the requirement of § 3104(c)(1) of the Delaware long-arm statute.

In *Thorn EMI* the court examined a defendant's use and sale of allegedly infringing products in Delaware. The court found that isolated sales do not qualify as transacting business. The court stated that a sale must be "part of a general business plan ... to solicit business in Delaware and deliver products to customers in Delaware" in order to rise to the level of transacting business. 821 F.Supp. at 274. The court also found that soliciting sales by distributing free samples could constitute "use" of an allegedly infringing product and could rise to the level of transacting business because it "tangibly impinges on the patentee's right to exclude others." *Id.* 821 F.Supp. at 275. Offering to sell an allegedly infringing product, like selling or using, must be considered in terms of whether a defendant's acts are "part of a general business plan" and of whether they "tangibly impinge" on the plaintiff's rights.

*Id.* 821 F.Supp. at 274. The court also found that "an act must be directed at residents of the state of Delaware and the protection of its laws," 821 F.Supp. at 274, citing *Sears*, 744 F.Supp. at 1292, in order to meet the transacting business requirement of § 3104(c)(1).

One of the few cases finding jurisdiction under the "offers to sell" provision is *Lifting Technologies, Inc. v. Dixon Industries, Inc.*, 1996 WL 653391 (D.Mont. Aug. 27, 1996). In *Lifting Technologies*, advertisements for allegedly infringing products reached six of plaintiff's customers in Montana. The defendant also sent a direct solicitation, including a price quote, to a Montana resident. *Id.* at *1. Intel has not shown that SST's advertisements have reached any current Intel customers in Delaware. Intel has not even alleged facts to show that potential customers for SST parts exist in Delaware, or that they have been exposed to SST's advertisements. SST has not distributed any free samples in Delaware, nor have SST's solicitations in Delaware been shown to have had any tangible effect on Intel's sales here. SST has directed its advertisements at a national audience, but SST has not specifically directed its advertisements at residents of Delaware. SST's advertisements in national magazines, without any more substantial act directed at Delaware, are not offers to sell allegedly infringing products in Delaware under 35 U.S.C. § 271(a). Even if the advertisements are considered as offers to sell, they do not rise to the level of transacting business in Delaware under § 3104(c)(1).

■ Intel also claims that the sales and marketing activities of SST's agents, S–J Mid–Atlantic and Nu Horizons, amount to "transacting business" in Delaware for purposes of § 3104(c)(1). Merely assigning the Delaware market to a sales representative, even considered in conjunction with SST's other activities, is not "part of a general business plan." *Thorn EMI*, 821 F.Supp. at 274. The fact that Delaware is one of thirty-four states assigned to sales representatives does not appear to have any tangible effect on Intel's rights in Delaware. SST's sales representative, S–J Mid–Atlantic, is contractually obligated to pursue sales of SST prod-

ucts in the territory including Delaware. Employees of S–J Mid–Atlantic have visited customers in Delaware on behalf of various manufacturers, but they have never solicited business on behalf of SST in Delaware. Intel presents no facts to show that SST's marketing efforts have cost Intel any sales in Delaware or had any tangible effect in Delaware. The acts of Intel's agents, like Intel's national magazine advertisements, do not rise to the level of transacting business under Delaware law. Therefore, the court finds that the sales and marketing activities of SST's agents targeting Delaware do not amount to transacting business in Delaware and do not give rise to jurisdiction under § 3104(c)(1) of the Delaware long-arm statute.

■ Intel also alleges that S–J Mid–Atlantic transacted business in Delaware for purposes of § 3104(c)(1) when it sent a data book to a Delaware resident. Intel cites *Crystal Semiconductor Corp. v. OPTI Inc.,* 1997 WL 798357, at *4–*5 (W.D.Tex. July 14, 1997), for the proposition that mailing a single price quote into a state is sufficient to sustain jurisdiction. In *Crystal Semiconductor* the court analyzed defendant's conduct under the Texas long-arm statute, which it found was "co-extensive with the limits of due process." *Id.* at *2. The court found that a price quote specifying price and delivery terms made to a prospective customer was a "substantial, affirmative act," *id.* at *5, and was "sufficiently egregious in its impact on the forum's legitimate interest," *id.,* to meet the requirements of due process. Here, SST's data book contained no prices or delivery terms and it is unclear whether SST or S–J Mid–Atlantic regarded the recipient of the data book as a prospective customer. Even if S–J Mid–Atlantic's shipment of the data book into Delaware is analogous to the price quote in *Crystal Semiconductor,* this court conducts its inquiry under the Delaware long-arm statute, not merely under due process. The shipment of SST's data book into Delaware was not "part of a general business plan" and did not "tangibly impinge" on Intel's rights. *Thorn EMI,* 821 F.Supp. at 274. Therefore, it does not amount to "transacting business" for purposes of § 3104(c)(1).

■ Intel also claims that SST "transacted business" in Delaware for purposes of § 3104(c)(1) when it made a sale to Intel's local counsel as a result of a telephone order placed by an employee in Delaware. In *Thorn EMI,* the court found that a single "isolated shipment of goods into Delaware" is not sufficient to constitute "transacting business" under § 3104(c)(1). 821 F.Supp. at 274. Even if a sufficient nexus exists between this sale and Intel's cause of action, several courts have found that a single transaction initiated by a plaintiff after the filing of a complaint is not sufficient to establish jurisdiction. In *DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419 (E.D.Va.1996), a paralegal employed by plaintiff's counsel ordered a waist pack holster, used for carrying a handgun, from alleged infringer Hafner by telephone. The court there suggested that "a plaintiff to whom a cause of action has accrued may not thereafter initiate a transaction for the sole purpose of creating jurisdiction." *Id.* 949 F.Supp. at 425. The court cannot base jurisdiction on events that occurred after the filing of Intel's complaint. *See Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990), *Crystal Semiconductor* 1997 WL 798357, at *4. *Compare Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1563 (Fed.Cir.1994) (allowing plaintiff to introduce a survey showing actual presence of 52 accused fans in the jurisdiction). Intel's purchase of parts from SST's distributor shows that SST has the capability to make sales in Delaware. It does not show that SST has made any other sales in Delaware, that this sale is "part of a general business plan," *Thorn EMI,* 821 F.Supp. at 274, or that SST has "tangibly impinged," *id.,* upon Intel's rights in Delaware. Taken alone or with SST's other sales and marketing activity, SST's sale of parts to Intel's local counsel does not amount to transacting business in Delaware.

■ Intel also claims that SST is transacting business in Delaware for purposes of § 3104(c)(I) indirectly through the "stream of commerce" because SST parts are incorporated into its customers' products and those

products are sold here. *See Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 110, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi* the Court was able to discuss jurisdiction only after finding that the "stream of commerce eventually brought some valves Asahi sold ... into California." 480 U.S. at 110–111, 107 S.Ct. 1026. The actual presence of a manufacturer's product in the forum is a prerequisite for stream of commerce jurisdiction. *See Max Daetwyler,* 762 F.2d at 299 (reviewing stream of commerce cases in which actual sales occurred in the forum). Intel asks the court to grant it a reasonable presumption that allegedly infringing SST parts are actually present through the stream of commerce in Delaware.

Intel is entitled to have all reasonable inferences drawn in its favor, but it must present the court with facts on which to base its inference. When a 12(b)(2) motion to dismiss is made after discovery has begun, the burden is on the nonmoving party to respond with "sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir.1984). Intel need not establish jurisdiction through undisputed facts, but it must allege specific facts in the record sufficient to support a *prima facie* case for jurisdiction. *See Joint Stock Society v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996) (stating that nonmoving party must "establish with reasonable particularity"its case for jurisdiction). The court will accept Intel's proffered evidence and uncontroverted allegations as true and will draw all reasonable inferences in favor of Intel as the nonmoving party. *See Joint Stock,* 936 F.Supp. at 193; *see also Beverly Hills Fan,* 21 F.3d at 1563.

Intel has apparently conducted very little discovery to determine whether SST parts are actually present in Delaware, nor has it made any independent investigation into the issue. Intel has made no factual allegations that would suffice to establish a *prima facie* case of jurisdiction based on any stream of commerce theory. *See Asahi,* 480 U.S. 102, 121, 107 S.Ct. 1026, 94 L.Ed.2d 92 (Stevens, J., dissenting) (arguing that a "regular course of dealing" may be sufficient where

product is present in forum); *see also Crystal Semiconductor,* 1997 WL 798357 at *4 (finding plaintiff failed to allege facts sufficient to make a *prima facie* showing of jurisdiction). Intel is entitled to have disputed facts resolved and reasonable inferences drawn in its favor, but Intel has provided no facts on which this court might base such an inference. As Intel has failed to set out specific facts on the record indicating that allegedly infringing SST parts are actually present in the District of Delaware, the court must conclude that there is no factual basis for finding that SST has transacted business in Delaware indirectly through the stream of commerce. Consequently, the court finds that SST has not transacted any business in Delaware and should not be subject to the reach of § 3104(c)(1) of the Delaware long-arm statute.

### 2. *Does § 3104(c)(3) authorize the court to exercise jurisdiction over SST?*

Intel also argues that SST should be subject to jurisdiction in Delaware under § 3104(c)(3) of the Delaware long-arm statute. Section 3104(c)(3) provides for jurisdiction over persons causing "tortious injury in the State by an act or omission in this State." 10 Del. C. § 3104(c)(3). This subsection, like § 3104(c)(1), is a specific jurisdiction provision. It allows jurisdiction to be based on a single act having a sufficient relationship to the plaintiff's cause of action. Intel says that if SST transacts business in Delaware by means of its infringing offers to sell, it has performed an act causing tortious injury in Delaware.

The court has already found that SST has not transacted any business in Delaware. Nor is the act of placing advertisements in magazines that are distributed to Delaware residents an act in Delaware. Under § 3104(c)(3), "the defendant, or an agent of the defendant, must be present in Delaware when the deed is done." *Joint Stock,* 936 F.Supp. at 193. The placement of advertisements in national magazines is an act performed outside of the jurisdiction, and so does not provide specific jurisdiction under § 3104(c)(3). *See Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1289, 1294 (D.De.

1990) (finding no presence in Delaware for purposes of § 3104(c)(3) when advertisements were placed in magazines in London); *DeSantis,* 949 F.Supp. at 419 (finding no presence in Virginia under a similar long-arm statute). The court finds that SST has not performed any act in Delaware causing tortious injury in Delaware, either directly or through its agents, and so is not subject to jurisdiction under 10 Del. C. § 3104(c)(3).

### 3. Does § 3104(c)(4) authorize the court to exercise jurisdiction over SST?

■ Intel argues that SST should be subject to the reach of § 3104(c)(4) of the Delaware long-arm statute because SST "regularly does or solicits business" in Delaware. This subsection has been interpreted as conferring general jurisdiction where a defendant's contacts with the forum state are unrelated to the alleged injury. *See Boone,* 1997 Del.Super. LEXIS 483, at *7 (Sept. 4, 1997) (stating that general jurisdiction "is based on the relationship between the forum and one of the parties"). In *Sears* the court found that "[i]n order to assert general jurisdiction, the defendant's activity in the forum mut be continuous and substantial." 744 F.Supp. at 1304. The court in *Sears* found that cases of general jurisdiction were extremely rare, citing only one case dating back to 1952 where the United States Supreme Court upheld jurisdiction based on a claim not related to the defendant's activities in the forum. *Id.,* citing *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

SST through its agents S–J Mid–Atlantic and Nu–Horizons makes its products available in a territory that includes Delaware. Intel contends that the existence of this channel of distribution amounts to "regularly soliciting business" in Delaware for purposes of § 3104(c)(4). The mere ability to respond to potential customer orders and inquiries does not constitute a regular course of conduct in the forum. SST's distributor Nu–Horizons has had no contacts with Delaware other than the single shipment of goods to Intel's local counsel and the shipment of a data book to a Delaware resident. The court has already found that these acts do not amount to transacting business in Delaware. These meager contacts can hardly be considered "continuous and substantial," *Sears,* 744 F.Supp. at 1304, for purposes of establishing general jurisdiction under § 3104(c)(4).

The same analysis applies to SST's advertisements in national magazines. In *Gerber v. Young,* 1987 WL 9670 (Del.Super. Apr. 6, 1987), the court found that a "pattern of regular solicitation" was required to show that advertising could satisfy the requirement of § 3104(c)(4). *Id.* at *2. In *Gerber* defendant Winter Place Stud Farm, Inc. used direct mail sent to Delaware residents and flyers posted at a Delaware racetrack as well as advertisements in national magazines which circulated to Delaware subscribers. *Id.* The court there found that Winter Place's conduct met the requirements of § 3104(c)(4), though it still did not meet the requirements of due process. *Id.; see also Lord & Burnham Corp. v. Four Seasons Solar Prods. Corp.,* 1984 WL 8233 at *3 (Del.Ch. Aug. 28, 1984) (finding that dealer newsletters, ad slicks, and brochures sold to dealers in Delaware satisfied § 3104(c)(4)). Here SST has done no advertising in Delaware other than through national magazines. SST has not specifically targeted Delaware residents through direct mail, flyers, or brochures. Intel has not cited, nor can the court find, any case showing that advertising in national magazines alone is sufficient to establish a "pattern of regular solicitation" or "continuous and substantial" activity within the forum. *Gerber,* 1987 WL 9670 at *2; *Sears,* 744 F.Supp. at 1304. Therefore, SST does not "regularly do or solicit business" in Delaware and is not subject to jurisdiction under 10 Del. C. § 3104(c)(4).

Neither § 3104(c)(1) nor § 3104(c)(3) nor § 3104(c)(4) of the Delaware long-arm statute authorizes this court to exercise jurisdiction over SST. Therefore, the court need not analyze whether exercising such jurisdiction would comport with the Due Process Clause.

The court will issue an Order in accordance with this Memorandum Opinion.