COMMISSARIAT À L'ENERGIE
ATOMIQUE, Plaintiff,

v.

CHI MEI OPTOELECTRONICS COR-
PORATION, Dell Computer Corp.,
Samsung Electronics Co., Ltd.,
Samsung Electronics America Inc.,
Samsung Electronics Canada Inc.,
Samsung International Inc., Sun
Microsystems Inc., Viewsonic Corp.,
Defendants.

No. CIV.A.03–484–KAJ.

United States District Court,
D. Delaware.

Sept. 22, 2003.

Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, DE, for plaintiff.

William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE, for Chi Mei Optoelectronics Corporation.

Richard D. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE, counsel for Samsung Electronics Co., Ltd., Samsung Electronics America Inc., Samsung Electronics Canada Inc., Samsung International Inc.

## MEMORANDUM OPINION

JORDAN, District Judge.

### I. INTRODUCTION

This is a patent infringement case. The court has jurisdiction under 28 U.S.C. § 1338. The plaintiff is Commissariat à l'Energie Atomique ("CEA"), a French government agency. The defendants are Chi Mei Optoelectronics Corporation ("CMO"), a Taiwanese corporation; Dell Computer Corporation, a Delaware corporation ("Dell"); Samsung Electronics Co., Ltd., a Korean corporation and its wholly owned subsidiaries Samsung Electronics America, Inc., a New York corporation, Samsung Electronics Canada, Inc., a Canadian corporation and Samsung International, Inc., a New Jersey corporation (collectively, "Samsung"); Sun Microsystems, Inc., a Delaware corporation ("Sun") and ViewSonic Corporation, a Delaware corporation ("ViewSonic").

On May 19, 2003, CEA filed a complaint alleging that CMO, among others, is infringing U.S. Patent Nos. 4,701,028 ("the '028 patent") and 4,889,412 ("the '412 Patent"), which are owned by CEA. (Docket Item "D.I." 1 at 2, 8.) The '028 Patent and the '412 Patent are both directed to technology involving the design and manufacture of Liquid Crystal Displays ("LCDs") and related products. (D.I. 1 at 2.) An LCD is a type of flat panel display

that is used in products such as computer monitors. (*Id.*)

On July 15, 2003, CMO filed a motion to dismiss CEA's complaint for lack of personal jurisdiction in Delaware and ineffective service of process, or in the alternative to quash service of process. (D.I.11.) The Court heard argument on CMO's motion on September 2, 2003. For the reasons set forth below, CMO's motion to dismiss is granted.

## II. BACKGROUND

The parties have fully briefed and argued CMO's motion to dismiss for lack of personal jurisdiction. The Court draws the following facts from these briefs and arguments and from CEA's complaint.

CEA, a not for profit French government agency with its principal place of business in Paris, France, has about 15,000 employees whose primary function is research and development of new technologies and innovations. (D.I. 14 at 6, fn. 2.) CEA performs fundamental and technological research in physics, chemistry, biology, microelectronics and microtechnologies and develops it to the point that it can be sold or licensed to the private sector for commercial use. (*Id.*) At issue in this case are two patents owned by CEA for "vertical alignment" or "VA" mode LCD technology. (*Id.* at 6.)

CMO, a Taiwanese corporation with its principal place of business in Taiwan, manufactures LCD panels. (D.I. 11 at 4.) According to CMO's website, "CMO's main business and core competence lies [in] manufacturing, researching and selling TFT–LCD Panels and Color Filters." (D.I. 14 at 7.) It is undisputed that CMO is the third largest LCD module maker in the world, with sales of over $1 billion worldwide, constituting an LCD market share of approximately 12% worldwide. (*Id.*)

Industry data demonstrates that CMO products are sold into North America, including the United States. (D.I. 14 at 8.) CMO supplies approximately 12% of the LCD market and North America accounts for over 30% of all computer monitor purchases. (*Id.*) CMO sells its LCD products directly to large original equipment manufacturers ("OEMs"), including Samsung, Proview, Jean, Sampo and ProArch Tech. (*Id.*) These OEMs incorporate CMO's LCD products into computer monitors, which are then shipped to major brand name computer manufacturers, including Dell, IBM, Hewlett–Packard and NEC–Mitsubishi. (*Id.*) These brands then ship their computer monitors to many large national retailers for sale to the public, both online via the Internet and in stores. (*Id.* at 9.) These retail stores include, but are not limited to, Best Buy, Circuit City, CompUSA, Office Depot, Staples, RadioShack, OfficeMax, Wal–Mart and Sears, all of which have store locations in Delaware. (*Id.*)

It is not disputed that CMO's LCD panels are designed and incorporated into larger pieces of equipment and that CMO generally sells its products directly to OEM equipment manufacturers. (D.I. 11 at 4.) CMO asserts that it has no operations in Delaware, no employees who work or reside in Delaware, is not licensed to do business in Delaware and does not own, lease, use or otherwise possess any property in Delaware. (*Id.*) CMO further asserts that it does not design, manufacture or test any of its products in Delaware or conduct any direct sales activities in Delaware, nor does it advertise in Delaware. (*Id.*) Finally, CMO asserts that it maintains a website that is hosted in Taiwan, but its products cannot be purchased through that website. (*Id.*) CEA does not dispute those assertions.

In its opening brief, CMO argues that CEA's complaint should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. (D.I. 11 at 5.) First, CMO states that it does not fall within the purview of the Delaware long-arm statute, 10 Del. C. §§ 3104(c)(1), (c)(3) and (c)(4). Specifically, CMO argues that it is not transacting business or performing any character of work in the State of Delaware. (D.I. 11 at 6.) CMO also argues that, because it has not transacted any business in Delaware, it has not caused a tortious injury in Delaware by an act or omission committed in Delaware. (D.I. 11 at 8.) CMO argues that it does not regularly conduct or solicit business or derive substantial revenue in Delaware and that it has no substantial and continuous contacts with Delaware. (D.I. 11 at 9.) Finally, CMO argues that the exercise of personal jurisdiction over CMO would violate the Due Process requirements of the U.S. Constitution. (D.I. 11 at 10.)

In its answering brief, CEA contends that CMO is subject to personal jurisdiction in Delaware because CMO is part of an established distribution channel designed to serve and benefit from U.S. markets, including the Delaware market. (D.I. 14 at 14.) CEA also argues that CMO's conduct falls within the Delaware long-arm statute, specifically §§ 3104(c)(3) and 3104(c)(4). (D.I. 14 at 21.) CEA claims that, because CMO voluntarily placed the allegedly infringing LCD monitors into the "stream of commerce" and that the monitors were then available for purchase in Delaware, CMO has committed acts in Delaware causing tortious injury to CEA in Delaware. (D.I. 14 at 22.) CEA also claims that CMO has derived substantial revenues from its sales into North America and therefore, by inference, Delaware. (D.I. 14 at 23.) Finally, CEA argues that this Court may exercise personal jurisdiction over CMO under Federal Rule of Civil Procedure 4(k)(2), based upon CMO's nationwide contacts with the United States. (D.I. 14 at 24.)

## III. DISCUSSION

■ As plaintiff, CEA must make a *prima facie* showing that this Court may exercise personal jurisdiction over CMO. *Intel Corp. v. Broadcom Corp.,* 167 F.Supp.2d 692, 699 (D.Del.2001). When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case, with the record viewed in the light most favorable to the plaintiff. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc. et al.,* 1999 WL 615175 at *1–2, 1999 U.S. Dist. LEXIS 12455 at *5–6 (D.Del. Aug. 3, 1999); *Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.,* 69 F.Supp.2d 622, 624 (D.Del.1999).

The determination of whether CMO is subject to personal jurisdiction requires a two-part analysis. *Broadcom,* 167 F.Supp.2d at 700; *Siemens,* 69 F.Supp.2d at 624; *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.1985). First, the Court must determine whether the language of the Delaware long-arm statute, 10 Del. C. § 3104(c), reaches the defendant. *Broadcom,* 167 F.Supp.2d at 700. Second, if the Court finds that CMO's conduct gives rise to personal jurisdiction under the long-arm statute, the Court must then determine whether subjecting CMO to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998)).

The Delaware long-arm statute has been construed "broadly...to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B*

*S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). Nevertheless, the Court begins its analysis with the Delaware long-arm statute.

## A. The Delaware Long–Arm Statute Does Not Authorize Exercising Personal Jurisdiction Over CMO

CEA contends that CMO is subject to jurisdiction under sections 3104(c)(1), (c)(3) and (c)(4) of the Delaware long-arm statute which provide:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

\*　　\*　　\*　　\*　　\*　　\*

(1) Transacts any business or performs any character of work or service in the State;

\*　　\*　　\*　　\*　　\*　　\*

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State ....

10 Del. C. §§ 3104(c)(1), (c)(3) & (c)(4).

### 1. Section 3104(c)(1) does not authorize the Court to exercise jurisdiction over CMO

CEA argues that the Court may exercise jurisdiction over CMO because it has "established distribution channel[s] designed to take advantage of the markets of this nation and [Delaware]." (D.I. 14 at 20.) Though CEA does not specifically mention § 3104(c)(1) as the statutory basis for this argument, the Court interprets it as a claim that CMO is transacting business in Delaware for purposes of § 3104(c)(1) indirectly through the "stream of commerce" because CMO's LCD panels are incorporated into computer monitors that are eventually sold in Delaware. *See Silicon Storage Tech.*, 20 F.Supp.2d at 697–98.

State courts have interpreted the "transacting business" provision of § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *See LaNuova*, 513 A.2d at 768. Moreover, in order to meet the requirements of § 3104(c)(1), CMO's actions must be directed at residents of Delaware and the protection of Delaware laws. *See Thorn EMI North America, Inc. v. Micron Tech., Inc.*, 821 F.Supp. 272, 274 (D.Del.1993) (citing *Sears, Roebuck & Co. v. Sears, plc*, 744 F.Supp. 1289, 1292 (D.Del.1990)). The Court conducts a fact-specific inquiry to determine if CMO's actions are sufficiently directed at residents of Delaware to constitute "transacting business" through "established distribution channels" in Delaware under § 3104(c)(1). *Siemens*, 69 F.Supp.2d at 625.

In order for the Court to exercise specific jurisdiction under § 3104(c)(1), CEA must present "competent evidence" that the accused products were present in Delaware at the time it filed suit. *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F.Supp.2d 423, 431 (D.Del.1999); *Silicon Storage Tech.*, 20 F.Supp.2d at 698. CEA's only proffer of evidence of that is a request sent by someone in Delaware to Dell Computer Corporation for two computer monitors which were never deliv-

ered.[1]  Nevertheless, CEA argues that the Court has personal jurisdiction under the "established distribution channel" theory adopted by the Federal Circuit in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir.1994).

In *Beverly Hills Fan*, the plaintiff presented clear evidence of pre-filing sales of the infringing product in the forum. *Beverly Hills Fan*, 21 F.3d at 1560.  The Court held that defendant in that case had an ongoing commercial relationship with the intermediary and the accused products in fact had been shipped into the forum. *Id.* at 1564.  Thus, the Court held that defendant was amenable to the exercise of personal jurisdiction. *Id.*

Unlike the facts of *Beverly Hills Fan*, the record here does not demonstrate the "existence of ongoing commercial relationships with retailers and customers in Delaware." *American Bio Medica*, 1999 WL 615175 at *5, 1999 U.S. Dist. LEXIS at *16.  The record reflects that CMO manufactures allegedly infringing LCD panels and sells them directly to large OEMs. CMO's LCD panels are then eventually incorporated into computer monitors that are sold in North America.  As discussed above, CEA has not presented competent evidence of pre-filing sales by CMO in Delaware.  Nor has CEA "demonstrate[d]...that [CMO] 'purposefully avail[ed itself] of the privileges and benefits of Delaware law.'" *Id.*, 1999 WL 615175 at *3, 1999 U.S. Dist. LEXIS at *10; *see also Thorn EMI North America v. Micron Tech., Inc.*, 821 F.Supp. 272, 274

(D.Del.1993) (stating that the designated conduct "must be directed at residents of the State of Delaware and the protection of its laws").  Therefore, the Court declines to extend jurisdiction over CMO under the "established distribution channel" theory advanced in *Beverly Hills Fan.*

CEA also urges this Court to follow *Motorola Inc. v. PC–Tel, Inc.*, 58 F.Supp.2d 349 (D.Del.1999) and *In re Elonex Phase II Power Management Litigation*, 2003 WL 21026758, 2003 U.S. Dist. LEXIS 7715 (D.Del. May 6, 2003).  However, the facts in those cases are distinguishable from the facts here.  In both *Motorola* and *Elonex*, Delaware residents and purchasers accessed defendants' websites to either purchase defendants' products or download software related to defendants' products. *Motorola*, 58 F.Supp.2d at 352, *Elonex*, 2003 WL 21026758 at *2–3, 2003 U.S. Dist. LEXIS at *5. In both of these cases, the Court considered defendants' websites a "purposeful minimum contact" as a part of the jurisdictional analysis. *Id.* Given that CEA does not dispute that CMO's products cannot be purchased through its website, the Court finds that the facts of *Motorola* and *Elonex* are inapposite.

Thus, the Court declines to find that CMO transacted business in Delaware, consistent with 10 Del. C. § 3104(c)(1). *American Bio Medica*, 1999 WL 615175 at *5, 1999 U.S. Dist. LEXIS 12455 at *17; *Silicon Storage Tech.*, 20 F.Supp.2d at 698.

---

1.  CEA has provided the Court with the Declaration of Susan Whitcraft (D.I.39), a resident of Wilmington, Delaware.  On April 24, 2003, Ms. Whitcraft logged onto Dell Computer's website from her home in Wilmington, viewed two of Dell's computer monitors that incorporate CMO's LCD panel and called Dell's toll free number to order the monitors. (D.I. 39 at 2.) Once Ms. Whitcraft received an Order Number to track the progress of her order, the order was canceled.  (*Id.* at 3.) The Declarations of Roger Greenbank (D.I.41) and Mark Donaldson (D.I.42), both residents of Wilmington, Delaware, discuss purchases of CMO's LCD panels they each completed via the Internet on July 11, 2003 and July 12, 2003 respectively, only *after* CEA filed its complaint on May 19, 2003.

## 2. Section 3104(c)(3) does not authorize the Court to exercise jurisdiction over CMO

■ CEA also argues that CMO should be subject to jurisdiction in Delaware under § 3104(c)(3) of the Delaware long-arm statute. Section 3104(c)(3) provides for jurisdiction over persons causing "tortious injury in the State by an act or omission in this State." 10 Del. C. § 3104(c)(3). Like § 3104(c)(1), § 3104(c)(3) is a specific jurisdiction provision. *Silicon Storage Tech.,* 20 F.Supp.2d at 698. It allows jurisdiction to be based on a single act having a sufficient relationship to the plaintiff's cause of action. *Id.* CEA states that, because it "has confirmed through actual purchases that CMO's infringing LCD modules are being sold in Delaware," it "has suffered economic loss in Delaware." (D.I. 14 at 23.) CEA argues that the sale of CMO's LCD panels is an act causing tortious injury in Delaware under § 3104(c)(3).

Since, as already noted, CEA has failed to establish a *prima facie* case that CMO has transacted any business in Delaware, either directly or indirectly through the "stream of commerce" or "established distribution channels," it follows that the alleged injury from such sales has also not been shown. Further, to establish jurisdiction under § 3104(c)(3), "the defendant, or an agent of the defendant, must be present in Delaware when the deed is done." *Id.; Compaq Computer Corp. v. Packard Bell Electronics, Inc.,* 948 F.Supp. 338, 343 (D.Del.1996).

CEA has established that CMO transacts business in North America, including the United States. However, CEA has not made a *prima facie* showing that CMO is present in Delaware. Thus, CEA has failed to show that CMO performed any act in Delaware causing tortious injury in Delaware, either directly or through its agents, and so is not subject to jurisdiction under § 3104(c)(3).

## 3. Section 3104(c)(4) does not authorize the Court to exercise jurisdiction over CMO

■ CEA also contends that CMO should be subject to jurisdiction under § 3104(c)(4) because CMO "derives substantial revenue" from its sales of LCD panels in North America. (D.I. 14 at 24.) This subsection has been interpreted as "conferring general jurisdiction where a defendant's contacts with the forum state are unrelated to the alleged injury." *Silicon Storage Tech.,* 20 F.Supp.2d at 699. Cases of general jurisdiction under Delaware's long-arm statute are rare. *Id.* The Court must determine whether by placing its product in the stream of commerce that reaches Delaware, CMO is subject to jurisdiction pursuant to § 3104(c)(4) of the Delaware long-arm statute. *Siemens,* 69 F.Supp.2d at 626.

When jurisdiction under § 3104(c)(4) is based on a stream of commerce theory, the Delaware Superior Court has held that the defendant must have an "intent or purpose to serve the Delaware market with their product." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1158 (Del.Super.Ct.1997). CEA has not demonstrated the CMO had an "intent or purpose" to serve the *Delaware* market; rather, CEA directs the Court to the fact that CMO has derived substantial revenue from its sales into *North America* to support its argument under § 3104(c)(4). Because the record does not show that CMO "derives substantial revenue" from Delaware, the Court cannot properly exercise personal jurisdiction over CMO pursuant to § 3104(c)(4).

## B. Rule 4(k)(2) of the Federal Rules of Civil Procedure Does Not Authorize Exercising Jurisdiction Over CMO

■ In order for Rule 4(k)(2) to be applicable in a given case, (1) the case must arise under federal law, (2) the foreign defendant must lack sufficient contacts with any single state to subject it to jurisdiction there, and (3) the foreign defendant must have sufficient contacts with the United States as a whole to satisfy due process. *See CFMT Inc. v. Steag Microtech, Inc.*, 1997 WL 313161 at *7, 1997 U.S. Dist. LEXIS 7905 at *22 (D.Del. Jan. 9, 1997), *aff'd* 965 F.Supp. 561 (D.Del.1997). Plaintiffs must also demonstrate that defendant is "not subject to the jurisdiction of *any* state" under Rule 4(k)(2). *Id.* (emphasis in original). Therefore, Rule 4(k)(2) provides "a narrow exception which may subject an alien defendant to a federal court's jurisdiction." *Id.*

CEA has not offered any evidence to support its contentions that CMO is subject to jurisdiction under Rule 4(k)(2). CEA alleges that CMO has extensive contacts with the United States on a nationwide basis, given that CMO filed trademark applications in the U.S. Patent and Trademark Office (D.I. 14 at 25) and has participated in the United States in industry standards setting meetings (*Id.* at 26). However, such evidence, even when viewed in the light most favorable to CEA, tends to support an argument that CMO is subject to jurisdiction in some other state or states, rather than prove that CMO is not subject to the jurisdiction of *any state*. The Court holds that CEA has failed to affirmatively establish that CMO is not subject to jurisdiction in any state as required for this Court to exercise jurisdiction under Rule 4(k)(2).

Neither § 3104(c)(1), (c)(3), nor (c)(4) of the Delaware long-arm statute authorize this Court to exercise personal jurisdiction over CMO, nor does Federal Rule of Civil Procedure 4(k)(2). Therefore, the Court need not analyze whether exercising jurisdiction would comport with the Due Process Clause, *Siemens*, 69 F.Supp.2d at 627, nor does the Court need to reach the issue of whether service was effectuated properly on CMO in Taiwan.

An Order will issue in accordance with this Opinion.

## ORDER

For the reasons set forth in the Memorandum Opinion issued on this date,

IT IS HEREBY ORDERED that defendant Chi Mei Optoelectronics Corporation's motion to dismiss for lack of personal jurisdiction (D.I. 10) is GRANTED.