# United States Court of Appeals for the Federal Circuit

04-1139

COMMISSARIAT A L'ENERGIE ATOMIQUE,

Plaintiff-Appellant,

v.

CHI MEI OPTOELECTRONICS CORPORATION,

Defendant-Appellee,

and

DELL COMPUTER CORPORATION, SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC.,
SAMSUNG ELECTRONICS CANADA, INC., SAMSUNG INTERNATIONAL, INC.,
SUN MICROSYSTEMS, INC., and VIEWSONIC CORPORATION,

Defendants.

Gaspare J. Bono, McKenna Long & Aldridge LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Song K. Jung, Matthew T. Bailey and Lora A. Brzezynski.

William J. Marsden, Jr., Fish & Richardson P.C., of Wilmington, Delaware, argued for defendant-appellee. With him on the brief was Eugene B. Joswick. Of counsel on the brief was Michael J. McKeon, of Washington, DC. Also of counsel were Brian T. Racilla, of Washington, DC, and Rex Huang, of Boston, Massachusetts.

Appealed from:    United States District Court for the District of Delaware

Judge Kent A. Jordan

# United States Court of Appeals for the Federal Circuit

04-1139

COMMISSARIAT A L'ENERGIE ATOMIQUE,

Plaintiff-Appellant,

v.

CHI MEI OPTOELECTRONICS CORPORATION,

Defendant-Appellee,

and

DELL COMPUTER CORPORATION, SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC.,
SAMSUNG ELECTRONICS CANADA, INC., SAMSUNG INTERNATIONAL, INC.,
SUN MICROSYSTEMS, INC., and VIEWSONIC CORPORATION,

Defendants.

_____

DECIDED:  January 19, 2005

_____

Before RADER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

DYK, <u>Circuit Judge</u>.

Plaintiff-Appellant Commissariat à l'Energie Atomique ("CEA") appeals the district court judgment dismissing its patent infringement action against Defendant-Appellee Chi Mei Optoelectronics Corporation ("CMO") for lack of jurisdiction.  We hold that the district court erred in denying CEA's request for jurisdictional discovery, and therefore vacate the judgment of dismissal and remand for limited jurisdictional discovery and for further consideration of the district court's jurisdiction based on that discovery.

BACKGROUND

Plaintiff-Appellant CEA is a French government research agency that develops new technologies for sale and license to the private sector for commercial use. CEA owns U.S. Patent Nos. 4,701,028, and 4,889,412, directed to technology for the design and manufacture of liquid crystal displays ("LCDs") and related products. An LCD is a type of flat panel display that is used in products such as computer monitors and television screens.

Defendant-Appellee CMO is a Taiwanese manufacturer of LCD products, including LCD modules that are alleged by CEA to infringe their patents. CMO is the third largest LCD module maker in the world. The company generally sells its modules directly to original equipment manufacturers ("OEM's") that subsequently incorporate the CMO modules into computer monitors. The computer monitors, in turn, are shipped to major brand name computer manufacturers, which then ship their products to a myriad of large retailers in the United States for sale to consumers, both online via the Internet, and in stores. CMO makes no direct sales to retailers.

CEA instituted this action in the United States District Court for the District of Delaware on May 19, 2003, against CMO and other companies, alleging infringement of the two patents. The action is still pending against the other parties and has been consolidated with additional actions brought by CEA against other LCD manufacturers, OEMs, name-brand computer manufacturers, and retailers. See, e.g., Commissariat à l'Energie Atomique v. Fujitsu Ltd., Civ. No. 03-1036 (D. Del. Nov. 13, 2003); Commissariat à l'Energie Atomique v. Best Buy Co. of Minn., Civ. No. 03-931 (D. Del. Oct. 6, 2003).

On July 15, 2003, CMO moved to dismiss CEA's complaint for lack of personal jurisdiction. At that time, the court had not yet set a discovery timetable for the case. CEA did not seek to conduct formal discovery before responding to the motion. CEA did submit documentary evidence with its response, and argued that the existing record was sufficient to deny the motion. CEA also argued that, if the record was not sufficient, it should be allowed to conduct discovery.

CEA presented industry data demonstrating that CMO sells over $1 billion of its products worldwide, including in the United States; that CMO supplies roughly 12% of the LCD market; that CMO is the number one supplier of 19" LCD monitors; and that North America accounts for approximately 30% of all computer monitor purchases. Industry data also indicate that CMO shipped approximately 2,950,000 LCD modules in the first five months of 2003. CEA further documented the existence of an established distribution network for LCD products, with published industry data on actual and forecasted sales that document the flow of displays from LCD suppliers such as CMO, through to OEMs, and on to name-brand computer manufacturers. Evidence was also presented of orders for devices incorporating CMO products placed, in Delaware, prior to the date CEA filed its complaint, and evidence of post-filing sales of such devices in Delaware. CEA did not produce any direct evidence of pre-filing sales of devices incorporating CMO products in Delaware. However, CEA alleged in its complaint that CMO derived "substantial revenue from services or things used or consumed within [Delaware]." (J.A. at 43.)

CMO submitted evidence that it had not transacted business itself, nor performed any type of work in Delaware, and that it had no operations in Delaware, no employees

who work or reside in Delaware, held no license to do business in Delaware, and did not own, lease, use or otherwise possess any property in Delaware.  However, CMO did not submit any evidence to contradict CEA's allegation that CMO derived substantial revenue from sales of its products to Delaware.  Nor did CMO submit evidence to contradict CEA's assertion that its products, as incorporated by OEMs into computer monitors, were likely to reach Delaware.  Instead, CMO argued that mere introduction of its products into the "stream of commerce," standing on its own, was not sufficient to establish personal jurisdiction under the Delaware long arm statute.[1]

On September 22, 2003, the district court dismissed the action against CMO for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  <u>Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corp.</u>, 293 F. Supp. 2d 423 (D. Del. 2003).  The court rejected arguments that sections 3104(c)(1), (3), and (4) of the Delaware long arm statute conferred jurisdiction.

---

[1]     The Delaware long arm statute, provides, in pertinent part:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>      . . .
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

Del. Code Ann. tit. 10, § 3104(c)(1), (c)(3) and (c)(4) (2003).

04-1139                                              4

CEA relied particularly on section 3104(c)(4), which establishes personal jurisdiction over a defendant that "[c]auses tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." Del. Code Ann. tit. 10, § 3104(c)(4) (2003). Our cases make clear that the tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales are made. N. Am. Phillips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed. Cir. 1994); Beverly Hills Fan Co. v. Royal Sovereign Corp, 21 F.3d 1558, 1571 (Fed. Cir. 1994).

CEA maintained that section 3104(c)(4) was applicable because CMO "derives substantial revenue" from its sales of LCD panels in the United States, including Delaware. The court found the record insufficient to satisfy the requirements of the long arm statute, because although CEA had demonstrated that CMO derived substantial revenue from its sales to North America, it had failed to demonstrate that it derived substantial revenue specifically from Delaware. 293 F. Supp. 2d at 429. The court also found that under Delaware law, in order to maintain jurisdiction under a "stream of commerce theory . . . the defendant must have an 'intent or purpose to serve the Delaware market with their [sic] product.'" Id. (quoting Boone v. Oy Partek Ab, 724 A.2d 1150, 1158 (Del. Super. Ct. 1997)). Finding that CEA had failed to produce sufficient evidence to satisfy any of the possible provisions of the long arm statute that might authorize personal jurisdiction over CMO in Delaware, the district court declined to

reach the issue of whether the requirements of the due process clause had been satisfied. [2] Id. at 430.

On October 6, 2003, CEA filed a motion for reconsideration, reiterating its request for jurisdictional discovery that had first been made in response to the defendant's motion to dismiss. Specifically, CEA requested jurisdictional discovery to "conclusively establish that CMO derives substantial revenue from Delaware and is subject to . . . jurisdiction" with "critical information" available from CMO including, "inter alia, sales of LCD monitors in Delaware, and the types and number of infringing modules sold in Delaware, both prior to and following the filing of the Complaint [and] competent evidence of pre-filing sales in Delaware, ongoing relationships with retailers in Delaware, and substantial revenues derived by CMO from Delaware." (J.A. at 831 (internal citations and quotations omitted).) CEA also sought jurisdictional discovery to determine whether or not CMO's website, proposing an "e-solution platform for customers and suppliers" would satisfy the "purposeful minimal contact" requirement as interpreted under Delaware law. (Id. at 832.) In the alternative, CEA requested entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure or certification under 28 U.S.C. 1292(b).

On November 21, 2003, the district court declined to grant jurisdictional discovery; denied CEA's motion for reconsideration; and entered final judgment in favor of CMO pursuant to Fed. R. Civ. P. 54(b). Commissariat à l'Energie Atomique v. Chi

---

[2] The district court also rejected CEA's argument for jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure. This argument has been abandoned by CEA on appeal.

<u>Mei Optoelectronics Corp.</u>, 293 F. Supp. 2d 430 (D. Del. 2003). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's decision regarding whether it has personal jurisdiction over a defendant without deference. <u>Graphic Controls Corp. v. Utah Med. Prods., Inc.</u>, 149 F. 3d. 1382, 1384 (Fed. Cir. 1998); <u>Viam Corp. v. Iowa Export-Import Trading Co.</u>, 84 F. 3d 424, 427 (Fed. Cir. 1996). The district court's discovery ruling is reviewed for abuse of discretion. <u>Katz v. Batavia Marine & Sporting Supplies, Inc.</u>, 984 F. 2d 422, 424 (Fed. Cir. 1993); <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 455 (3rd Cir. 2003).

CEA first seeks a reversal of the judgment, arguing that the evidence presented was more than sufficient to establish jurisdiction under section 3104(c)(4) of the Delaware long arm statute, and that the exercise of personal jurisdiction is proper under this court's due process analysis in <u>Beverly Hills Fan</u>, 21 F.3d at 1565-69.[3] As an alternative to reversal, CEA urges this court to vacate the judgment below and remand to allow CEA to take jurisdictional discovery.

### I

In order to establish personal jurisdiction in a patent infringement case over a non-resident defendant whose products are sold in the forum state, a plaintiff must

---

[3]    In its brief, CEA also relied on section 3104(c)(3), the "transacting business" provision. Our review of the Delaware case law indicates that this provision is not a valid basis for assertion of jurisdiction under the stream of commerce theory, and we therefore focus our inquiry on section 3104(c)(4). <u>See, e.g.</u>, <u>Boone</u>, 724 A.2d at 1157-58; <u>see also</u> <u>In re Elonex Phase II Power Mgmt. Litig.</u>, 2003 WL 21026758 (D. Del., May 6, 2003); <u>Intel Corp. v. Broadcom Corp.</u>, 167 F. Supp. 2d 692 (D. Del. 2001).

show both that the state long arm statute applies and that the requirements of due process are satisfied. Viam, 84 F.3d at 427; Beverly Hills Fan, 21 F.3d at 1569.[4]

Contrary to the district court's holding, the evidence already presented by plaintiff is sufficient to demonstrate that CMO sells a very large volume of LCDs to companies which incorporate these displays into their final product and that these products are likely sold in Delaware in substantial quantities. The district court found that because CEA failed to present evidence of pre-filing sales of CMO products in Delaware (although evidence was presented on pre-filing orders and post-filing sales), and only submitted nationwide data on CMO sales, as opposed to CMO sales specifically in Delaware, that CEA failed to demonstrate that CMO products entered the state, or that the company derived substantial revenue from the sale of its products in Delaware. Commissariat, 293 F. Supp. 2d at 428 & n.1, 429.

The district court imposed too high a burden of proof on CEA. Based on the allegations in the complaint, the evidence submitted by CEA, and CMO's failure to rebut the factual inference that devices incorporating its LCDs were sold in Delaware, the district court should have found CEA's showing sufficient to establish that substantial revenues could be derived by CMO from the sales of products in Delaware incorporating CMO's LCDs. See, e.g., Beverly Hills Fan, 21 F.3d at 1563. However,

---

[4] In this connection, CEA improperly relies on our non-precedential affirmance of the district court's ruling in In re Elonex Phase II Power Mgmt. Litig., 2003 WL 21026758 (D. Del. May 6, 2003), in violation of Federal Circuit Rule 47.6 which prohibits the citation of nonprecedential opinions. (Reply Br. at 2, citing In re Elonex Phase II Power Management Litigation, 97 Fed. Appx. 329 (Fed. Cir. 2004) as "requir[ing] reversal of this case.").

the question of whether that showing is sufficient for personal jurisdiction presents difficult questions under both Delaware law and the due process clause.

The scope of the stream of commerce theory under Delaware law is not clear, and the issue has yet to be directly addressed by the Delaware Supreme Court. In Boone, the Delaware Superior Court held that the stream of commerce theory is available under section 3104(c)(4). 724 A.2d at 1158; see also Siemens Aktiengesellschaft v. LG Semicon Co., 69 F. Supp. 2d 622, 626-27 (D. Del. 1999). However, it is not clear 1) whether proof of an "intent or purpose to serve the Delaware market" is required, see Boone, 724 A.2d at 1158; and 2) whether the Delaware long arm statute extends to the full extent that the due process clause would permit.[5]

As to the due process question, the Supreme Court has been less than clear as to whether a showing such as that made by the plaintiff here is sufficient to satisfy the purposeful minimum contacts required to exercise personal jurisdiction. We have elsewhere reviewed the evolution of Supreme Court precedent in this area, as well as the debate between the regional circuits, as to the proper interpretation of the due process limits of the "stream of commerce" theory. See, e.g., Beverly Hills Fan, 21 F. 3d at 1565-66; Viam, 84 F.3d at 427-28. The exercise of personal jurisdiction

---

[5] Compare LaNuova v. Bowe Co., 513 A.2d 764, 768 (Del. 1986) (stating that the Delaware long arm statute "has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause"); Jeffreys v. Exten, 784 F. Supp. 146, 151 (D. Del. 1992) ("Delaware courts have construed the [long arm] statute as conferring jurisdiction to the maximum parameters of the due process clause."), with Hercules Inc. v. Leu Trust & Banking, 611 A.2d 476, 483 (Del. 1992) (holding that the two jurisdictional inquiries are separate, and that satisfaction of the state long arm statute must be established prior to consideration of due process); Intel Corp. v. Silicon Storage Tech. Inc., 20 F. Supp. 2d 690, 695 (D. Del. 1998) (holding that the mandatory two-step inquiry should not be ignored out of a desire to afford maximum jurisdictional coverage).

consistent with due process requires "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Minimum contacts, in turn, are established by "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

In World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), the Court first touched on the stream of commerce question and distinguished between "isolated occurrence[s]," where a product finds its way into the forum State; and sales that "arise[] from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product" in that state. Id. at 297. A majority of the Court indicated that the purposeful availment requirement of minimum contacts could be satisfied when the defendant "should reasonably anticipate being haled into court." Id. However, the Court did not specify in any detail the contours of what would constitute a "reasonable anticipat[ion of] being haled into court," and did not need to resolve the issue, given the absence of any "showing that any automobile [sold by defendants] has ever entered [the forum state] with the single exception of the vehicle involved in the present case." Id. at 289.

It was not until the case of Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987), that the Court was squarely confronted with facts involving the assertion of personal jurisdiction over a foreign defendant in a stream of commerce case involving the use of established distribution networks, where the defendant itself had no direct

contacts with the forum state. There, the Court was split as to what would constitute sufficient minimum contacts with the forum state under the stream of commerce theory. The case was ultimately decided on the "fairness prong" of the due process inquiry. Id. at 114-15.

On the question of minimum contacts, Justice O'Connor, writing for four members of the Court, urged that more than a "mere act of placing the product into the stream [of commerce]" is required, and that due process also demands "an act of the defendant purposefully directed toward the forum State." Id. at 112. Justice Brennan's position, adopted by three others, was that such "additional conduct" is not needed when the defendant places goods in a stream of commerce defined as "the regular and anticipated flow of products from manufacture to distribution to retail sale." Id. at 117.[6]

Like Asahi itself, this case involves a component of a final product—in Asahi, the component was tire valve assemblies that were subsequently incorporated by tire manufacturers into tire tubes, 480 U.S. at 106; here the component is an LCD display which is subsequently incorporated by OEMs into computer monitors. The evidence on the established distribution channels presented by CEA suggests that the flow of CMO products to Delaware is "regular and anticipated," and more than "unpredictable currents or eddies," thus likely satisfying Justice Brennan's version of the stream of commerce theory. Id. at 117. However, evidence has not yet been presented that

---

[6] Justice Stevens wrote separately, joined by two Justices, stating that it was not necessary to reach the minimum contacts issue. 480 U.S. at 121. He went on to observe that, at least in the context of product liability actions, whether or not conduct with a foreign state "rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components." Id. at 122. That test, designed for products liability cases, is inapplicable to actions for patent infringement.

would satisfy Justice O'Connor's standard for "[a]dditional conduct of the defendant [to] indicate an intent or purpose to serve the market in the forum State, [such as] . . . advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state." Id. at 112.

On the existing record, this case thus presents a factual scenario which would require us to determine whether or not additional conduct, beyond a showing of use of established distribution channels, is required to meet the demands of due process under the stream of commerce theory of personal jurisdiction. We have not had occasion to resolve that question,[7] and we conclude that we should not do so on the inadequate record presented here.

Delaware law is unclear as to whether the proper interpretation of the long arm statute accords with Justice O'Connor's or Justice Brennan's view as expressed in Asahi. Delaware law is also unclear as to whether or not the long arm statute is coextensive with the due process clause. The regional circuits, as well, remain divided on the proper due process standard. Compare Bridgeport Music, Inc. v. Still N the Water Publ'g, 327 F.3d 472, 479-80, (6th Cir. 2003) (adopting Justice O'Connor's "stream of commerce 'plus'" theory), with Dehmlow v. Austin Fireworks, 963 F.2d 941, 947 (7th Cir. 1992) ("Because the Supreme Court established the stream of commerce theory [in World Wide Volkswagon], and a majority of the Court has not yet rejected it,

---

[7] We have yet to decide whether Justice Brennan's standard is sufficient to satisfy due process, because we have yet to be presented with facts that do not meet the more rigorous standard adopted by Justice O'Connor. Beverly Hills Fan, 21 F. 3d at 1566; Viam, 84 F.3d at 428.

we consider that theory to be determinative.") and Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 614 (8th Cir. 1994) (same). We conclude that there is substantial uncertainty concerning both the scope of the Delaware law and that of the due process clause, and that these issues should not be resolved on the present record because the district court declined to order jurisdictional discovery.

II

The district court denied plaintiff's discovery request as untimely, rather than as irrelevant. In denying the request, the court held CEA "did not adequately preserve its position that jurisdictional discovery was necessary" because CEA did not fully brief or argue the issue prior to his ruling on the motion to dismiss. 293 F. Supp. 2d at 434. The court found that it was "simply too late in the day for CEA to request jurisdictional discovery." Id.

On procedural issues such as the timeliness of discovery requests, we are guided by the law of the regional circuit in which the district court sits. See, e.g., Biotec Biologische Naturverpackungen v. Biocorp Inc., 249 F.3d 1341, 1355 n.4 (Fed. Cir. 2001), (discovery under FRCP 56(f) is governed by regional circuit law); Beverly Hills Fan, 21 F.3d at 1561 (relying on regional circuit law to determine if the appellant had procedurally waived the right to have certain evidence considered part of the record on appeal); Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc., 813 F.2d 1207, 1209 (Fed. Cir. 1987) (determining that motion to quash a subpoena requesting discovery from non-party is governed by regional circuit law).

Plaintiffs adequately preserved their discovery request under Third Circuit law, which does not require the formal filing of a request for discovery in order to preserve

the issue. In <u>Renner v. Lanard Toys Ltd.</u>, 33 F.3d 277, 283 (3d Cir. 1994), the Third Circuit reversed a district court's dismissal of a product liability action for lack of personal jurisdiction, holding that jurisdictional discovery was required, and that "[a]lthough the [plaintiffs] failed to make formal discovery requests, they preserved their position that discovery was needed in their Memorandum of Law in opposition to [the defendant's] motion to dismiss for lack of personal jurisdiction." Here, plaintiffs did not waive their right to discovery, but preserved the issue by initially requesting discovery in their opposition to the motion to dismiss, a request which was reiterated during oral argument, and reasserted and elaborated in greater detail in their motion for reconsideration. The mere fact that they also argued that the record was sufficient to establish jurisdiction without discovery was not a waiver of the right to the discovery in the event the district court disagreed.

Nor is there doubt that plaintiff's discovery request was highly relevant and that additional facts are likely available to assist the court in making the jurisdictional determination. <u>Toys "R" Us</u>, 318 F.3d at 456. In determining the relevance of a request for jurisdictional discovery, we apply Federal Circuit law. <u>See, e.g.</u>, <u>Truswal</u>, 813 F.2d at 1212 (holding that Federal Circuit law governs the relevance of discovery requests in patent cases when substantive patent law is implicated); <u>see also</u> <u>Beverly Hills Fan</u>, 21 F.3d at 1564 (Federal Circuit law governs determination of personal jurisdiction in patent actions because jurisdiction is "intimately involved in the substance of enforcement of the patent right.").

In this case, jurisdictional discovery is of particular relevance, and CEA has clearly made a sufficient threshold showing to merit jurisdictional discovery. <u>See, e.g.</u>,

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3rd Cir. 1992) (holding that plaintiff's right to conduct jurisdictional discovery should be sustained when factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with "reasonable particularity"). Indeed, CEA has gone beyond factual allegations, and has already made a prima facie case for CMO's use of an established distribution network that likely results in substantial sales of its products in Delaware. As we have discussed, this showing likely satisfies the standard set forth by Justice Brennan in Asahi, of the "regular and anticipated flow of products from manufacture to distribution to retail sale." 480 U.S. at 117. However, CEA is entitled to jurisdictional discovery to determine whether it can satisfy Justice O'Connor's more restrictive version of the stream of commerce theory.

Discovery may provide pertinent evidence to establish the defendant's intent and purpose to serve the Delaware market, including demonstration of CMO's "ongoing relationships with retailers in Delaware," (J.A. at 831); CMO's knowledge that its products were being shipped to Delaware; its design and marketing efforts directed to the U.S. market (including Delaware); and more information on the defendant's e-solution platform. (Id. at 832) In particular, further discovery may yield evidence of the "additional conduct," beyond the "mere act of placing a product in the stream of commerce," required by Justice O'Connor to establish minimum contacts, such as the existence of marketing arrangements and demonstration that the website serves as a "channel[] for providing regular advice to customers in the forum State." [8] 480 U.S. at

---

[8] The website defines CMO's service strategy "[t]o provide real time solution to supplier chain and customer chain after goods exit of CMO [sic]." (J.A. at 319.) The

04-1139                                    15

112. If CEA is able to satisfy Justice O'Connor's test, there will be no need to address whether the less restrictive test proposed by Justice Brennan should be the standard under Delaware law and under the due process clause.

Accordingly, we hold that the district court abused its discretion in denying CEA's discovery request.

CONCLUSION

For the foregoing reasons, we vacate the district court's decision and remand for further proceedings in accordance with this opinion.

VACATED AND REMANDED

COSTS

No costs.

---

question for discovery is whether this service strategy has in fact been implemented, and whether it reaches customers in Delaware.